[Cite as *Klingensmith v. Klingensmith*, 2026-Ohio-3078.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

PATRICK F. KLINGENSMITH, JR.,

Plaintiff-Appellee,

v.

HOLLY J. KLINGENSMITH NKA TOTTEN,

Defendant-Appellant.

---

### OPINION AND JUDGMENT ENTRY
### Case No. 26 MA 0009

---

Civil Appeal from the
Court of Common Pleas, Domestic Relations Division, of Mahoning County, Ohio
Case No. 2019 DR 00382

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Mark A. DeVicchio* and *Atty. Tallie R. Orengia*, Betras Kopp, LLC, for Plaintiff-Appellee

*Atty. Rhys B. Cartwright-Jones*, for Defendant-Appellant

Dated: August 7, 2026

---

_____

**WAITE, P.J.**

{¶1} Appellant Holly J. Klingensmith nka Holly Totten appeals the decision of the Mahoning County Court of Common Pleas, Domestic Relations Division, granting Appellee Patrick F. Klingensmith, Jr.'s motion for custody. The parties were married and had two children together, but were divorced on June 30, 2021. Appellant mother was granted custody of both children in a shared parenting agreement. Appellee father's motion for custody, at issue in this appeal, was heard in a two-part trial in November of 2025 and January of 2026. As a result, Appellee was designated as residential parent and legal guardian of the younger child, C.K. Appellant retained custody of the older child, L.K.

{¶2} On appeal, Appellant argues that there was insufficient evidence of a change in circumstances, required to justify a reallocation of parental rights, and that it was not in the best interests of C.K. for parental rights to be changed. The record contains evidence of a sharp increase in hostility between the parties since the prior decree, resulting in Appellant's refusal to comply with court orders, her repeated interference with Appellee's contact rights, and the failure of reunification counseling. The evidence supports both that a change of circumstances occurred and that the change of custody was in the best interests of the children.

{¶3} Hence, none of Appellant's assignments of error have merit and the judgment of the trial court is affirmed.

<u>Facts and Procedural History</u>

{¶4} The matter began in a divorce complaint filed August 1, 2019. The parties were divorced on June 30, 2021, and entered into a shared parenting plan for their two

minor children, L.K. (d.o.b. 5/28/2010) and C.K. (d.o.b. 7/1/2015).  Appellant mother was designated the residential parent, and Appellee father was to have supervised parenting time at the Solace Center.

{¶5}    This case has generated a great deal of litigation following the divorce decree.  The docket contains over 650 line items.  On August 19, 2021 Appellee filed a motion to reallocate parental rights.  Between that date and the date of trial on the motion, the parties filed over a dozen additional motions, including contempt motions, motions to modify visitation, a motion for physical and mental health evaluations, motions to stay execution and set aside a magistrate's order, a motion for a new judge, a motion to compel reunification counseling, a motion for an in camera interview of the children, and a motion to suspend parenting time.  A visiting judge was appointed to the case.  (See 9/8/23 J.E.)  After an eight-day trial, the court issued its ruling on February 5, 2024, denying the motion to reallocate.

{¶6}    In its entry and as part of its decision, however, the court ordered the parties to begin reunification counseling with Jill Thompson.  The court also ordered parenting classes, and ordered Appellee father to attend a batterer's intervention class.  While the contempt motions were also denied, Appellant was ordered to take the children to a psychiatrist or psychologist as discussed at trial, and to provide Appellee with all up-to-date contact information, including information about counselors and psychologists, within 30 days.  The court denied Appellant's motion to modify Appellee's companionship with the children, and instead ordered that until Appellee and the children attended a reconciliation appointment, Appellee would continue to meet once a week with them as well as engage in court-ordered FaceTime video chats.  Appellant was ordered to

facilitate reunification appointments. After the first meeting with the reconciliation counselor, further meetings would be at the discretion of the counselor. The parties were ordered not to discuss parenting issues in the presence of the children. Both parties were to have full access to the children's medical and scholastic records and neither party was to interfere with this access.

{¶7} Further litigation continued after the February 5, 2024 ruling. On June 4, 2024 Appellee filed a motion to show cause, alleging that the court-ordered reunification counseling had not taken place and that Appellant had canceled all appointments. The motion also alleged that Appellant had failed to provide contact information for the children's counselor, as ordered.

{¶8} On October 15, 2024 Appellant filed a motion to modify Appellee's parenting time and to have the court conduct an in camera interview of the children. The motion also sought to terminate counseling or have a different counselor appointed.

{¶9} On January 7, 2025 Appellant filed a motion to compel. On January 29, 2025 Appellee filed a motion for an in camera inspection of video recordings he had made of the parties. A status hearing was held on May 12, 2025. Appellant appeared without counsel and requested court-appointed counsel, and was given information on applying for court-appointed counsel. The parties agreed to meet with another counselor, Dr. Sarah Macovitz, on June 9, 2025. After the meeting, Dr. Macovitz recommended that she and the judge conduct an in camera interview of the children and that any parenting time schedule be set after the interview.

{¶10} On June 20, 2025 Appellant filed a motion for court-appointed counsel. However, as she failed to include any financial information on the affidavit of income and expenses, counsel was not appointed.

{¶11} On July 9, 2025 a hearing was held following an in camera interview of the children. Appellant appeared without counsel. The court determined that it was no longer in the best interest of L.K. to be pressured to have contact with Appellee. The court determined, however, that C.K. expressed an interest in having a relationship with Appellee, and the court considered it in the child's best interest to pursue this interest. The court ordered that Appellee was to meet C.K. at a Dairy Queen that had previously been used as a meeting point, and that Appellee was to have telephone contact with C.K. on Sundays at 3:30 p.m.

{¶12} On August 6, 2025, Appellee again filed a motion for custody. This motion is the focus of the instant appeal. Appellee argued that Appellant was engaging in acts of parental alienation and child abuse by intentionally manipulating the children in order to destroy their relationship with Appellee. He also argued that Appellant failed to comply with the court's order that Appellee be permitted telephone contact once per week, and that Appellant agreed in court to provide him with the cell phone numbers of the children, but she had not.

{¶13} A status hearing was held on September 17, 2025. Appellant appeared without counsel. Dr. Macovitz appeared at the hearing. Appellant admitted that she terminated the cell phone accounts of the two boys after the court ordered that Appellee was to have telephone contact every Sunday. Hence, the court ordered Appellee to purchase pre-paid cell phones for the boys and for Appellee to contact Appellant and

arrange a time and place to give the phones to the boys. Appellee was granted voice or text contact with the boys, without interference from Appellant. Appellee was advised to contact Appellant if the boys failed to respond to his calls, and she was to encourage them to respond.

{¶14} Trial dates for the motion for custody were set for November of 2025 and January of 2026.

{¶15} On October 15, 2025 Appellee filed a motion to show cause, alleging that Appellant failed to deliver the phones he had purchased to the boys, as ordered, instead returning the phones to Appellee.

{¶16} Trial on the motion for custody began on November 19, 2025 and continued on January 7, 2026. Appellant appeared without counsel. The trial was conducted by visiting Judge Pamela Rintala. Appellee's counsel called Appellant to testify. Appellee also testified. Appellant separately testified on her own behalf. The court found that as a result of the prior hearing regarding parental rights, the parties were ordered to attend reunification counseling, with the goal that Appellee would obtain standard parenting time with his children. The plan as ordered was that Appellant would enter the building with the boys, get settled in, and Appellee would arrive a few minutes later. In reality, although Appellant would sometimes appear in the parking lot of the session, she would enter the building alone, leaving the children in the car. She would then exit the building and leave with the children. Appellee had been granted the right to have dinner once per week with the children, but Appellant prevented it. On the few occasions he did have direct contact with his children, Appellant would be present, would answer for them and not let them speak, and would keep Appellant at a distance from the children. Appellee was permitted

by court order to have phone contact with the children, but Appellant usually prevented it. Appellant testified that she only allowed contact if the children specifically stated that they wanted contact. The court ordered Appellant to allow Appellee to deliver two cell phones to the children so they could communicate directly with Appellee. She claimed that the children received the phones, but no calls were made on them, so she later returned the phones. Appellant was also ordered to obtain counseling with the children and to give Appellee the contact information of the psychiatrist or psychologist. Appellant did not provide Appellee with any contact information, and there was no evidence that any sessions ever took place.

{¶17} Appellee testified that he had been given no face-to-face contact with C.K. since July of 2025. Appellee appeared for visits, but C.K. was either not there or did not exit Appellant's car. Appellee could only contact C.K. by calling Appellant's phone, but those conversations were short and not fruitful.

{¶18} Appellee testified that he had followed all court orders. Appellee said that L.K. had been struggling in school since the previous court order and C.K. was getting B and C grades. If he were granted custody, Appellee testified he would move them to a new school district, but had no plans on relocating his home. He testified he had no health concerns for himself, while Appellant complained about her own health. Appellee said he contacts the school to keep up to date with how his children are doing. L.K. plays football at school, and Appellee attends all the games. Appellee testified he would facilitate visitation between the children and Appellant if he were given custody. He feared, however, that he would be able to have no relationship at all with his boys if Appellant retained custody.

Case No. 26 MA 0009

**{¶19}** Appellant testified that she does not feel safe around Appellee. During one visit, she yelled at Appellee while the children were with her and said that Appellee was invading her personal space. She has told the children that Appellee made bad personal choices, and that he calls people terrible names. When asked whether she complied with court orders regarding Appellee's right to contact and communication, she answered that it was up to the children to decide if they want to have contact with Appellee. She testified a number of times that she was not sure what the court orders actually required. (11/19/25 Tr., pp. 292, 293, 325.) Appellant said the children do not respect Appellee and have nothing to say to him. She testified that it had been years since the children were alone with Appellee, and then it was only for a few minutes. She testified that visitation, as ordered by the court, had not taken place for five-and-one-half years. (11/19/25 Tr., p. 309.) She agreed the court had ordered Appellee had the right to consistently spend time with the children, and that she was ordered to vacate the area during his visitation, but admitted that she had not facilitated any visitation. (11/19/25 Tr., p. 312.)

**{¶20}** She testified that she did not want the phones Appellee provided because she feared they contained tracking devices, and that she cancelled the cell phones she had provided and was paying for because she needed money for other things. She said she had appeared at some counseling sessions, but the children did not get out of the car, and that she cancelled some sessions. She specifically admitted she did not obey the order to take the children to Dr. Jill Thompson, walk them in, and leave after 15 minutes. She was asked about a prior statement she made that the children were seeing a psychiatrist or psychologist, and she admitted they were not.

{¶21} The court filed its judgment entry on January 28, 2026. After making extensive findings of fact and applying the law, the court determined that there had been a change in circumstances, and that it was in the best interest of C.K. that Appellee be designated residential parent and legal custodian. Appellee's motion for custody of L.K. was denied. L.K. was encouraged, but not ordered, to spend weekends with C.K. on the weekends C.K. was with Appellee. Appellant was granted standard visitation, with one mid-week visit. The court also set forth orders regarding its expectation that Appellant and Appellee would cooperate with child care. The court denied all other pending motions. This timely appeal followed.

ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND A SUFFICIENT POST-DECREE CHANGE IN CIRCUMSTANCES UNDER R.C. 3109.04(E)(1)(A) TO JUSTIFY A TRANSFER OF C.K.'S RESIDENTIAL PLACEMENT.

{¶22} Appellant correctly argues that a trial court must find a change in circumstances has occurred before deciding whether a reallocation of parental rights is in the best interests of the child, pursuant to R.C. 3109.04(E)(1)(a). Appellant is also correct that the change of circumstances must be significant, and that "the change must be a change of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). Appellant also correctly observes the change of circumstances must result from facts that have arisen after the most recent decree regarding the allocation of parental rights and responsibilities. *Lipp v. Lipp*, 2023-Ohio-

4741, ¶ 13 (7th Dist.); R.C. 3109.04(E)(1)(a).  Appellant contends that the trial court erred in finding a change of circumstances occurred in this matter, and urges that the judgment should be reversed on this basis.

**{¶23}**   Decisions regarding child custody are within the sound discretion of the trial court and will only be reversed on appeal for abuse of that discretion.  *Reynolds v. Goll*, 75 Ohio St.3d 121, 124 (1996).  An abuse of discretion connotes that the trial court's decision was arbitrary, unreasonable, or unconscionable.  *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 603 (7th Dist. 2000).  "The term 'abuse of discretion' means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough."  *In re S.S.L.S.*, 2013-Ohio-3026, ¶ 22 (7th Dist.).  The abuse of discretion standard applies to both the finding of a change of circumstances and the best interests ruling of the trial court.  *Davis* at 418; *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

**{¶24}**  Under R.C. 3109.04(E)(1)(a):

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.

Thus, finding a change in circumstances has occurred is the first step in this process.

Case No. 26 MA 0009

**{¶25}** Appellant contends that there was insufficient evidence to support the conclusion that a change of circumstances had taken place.  Normally, a review for abuse of discretion subsumes the more particular review of the sufficiency or weight of the evidence in child custody cases.  *See*, *e.g.*, *M.K. v. A.K.*, 2017-Ohio-8458 (5th Dist.) (manifest weight and sufficiency challenges ignored under abuse of discretion review).  Nevertheless, even under an abuse of discretion review, the reviewing court must examine whether the evidence supports the trial court decision.  "[T]he reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct."  *Miller* at 74.  "Where the trial court's change-in-circumstances determination is supported by competent, credible evidence, its decision will not be reversed on appeal as being against the manifest weight of the evidence." *Polhamus v. Robinson*, 2017-Ohio-39, ¶ 28 (3d Dist.)

**{¶26}** Appellant cites three Seventh District cases she contends support her position.  Appellant contends that *Craig v. Athey*, 2025-Ohio-336 (7th Dist.) supports her argument that no change of circumstances can be found when the facts merely describe a continuation of the status quo.  In *Craig*, the appellant tried to overturn a decision denying a motion for reallocation of parental rights where the court found no change in circumstances.  This is the opposite position from the decision in the current appeal.  In *Craig*, we deferred to the findings and discretion of the trial court, as we are required in these cases.  The issue in *Craig* was not whether the facts showed merely a continuation of the status quo, but rather, whether the mother's move to a location 45 miles away should be treated as a change in circumstances.  The evidence showed no detrimental

effect on the child and some positive effect. Thus, there was no abuse of discretion in the trial court's decision there was no change in circumstances arising from the move.

**{¶27}** Appellant argues that *Chick v. Chick*, 2020-Ohio-4431 (7th Dist.) supports her position because no change of circumstances was found in an anticipated school change, coupled with ongoing problems with the child related to communication and education. Once again, *Chick* involves a challenge to the denial of a motion to reallocate parental rights. We again deferred to the trial court's discretion in the matter. The communication issues and the expectation that a school change was probable existed prior to the custody decree, and so could not be considered as "new." Additionally, the evidence contradicted the mother's argument that the child was having educational difficulties. Nothing in *Chick* supports Appellant's arguments, here.

**{¶28}** Finally, Appellant cites *Depascale v. Finocchi*, 2010-Ohio-4869 (7th Dist.) in support. She argues that in *Depascale* we refused to treat friction, hostility, and communication failures as a basis for a change in circumstances. Once again, *Depascale* involved an appeal of the denial of a motion to modify parental rights. The appellant in *Depascale* relied on facts that existed prior to their most recent parental rights decree to support a change in circumstances had occurred. Thus, the facts did not support a change in circumstances following that decree. There was an argument that the mother moved to a location a few miles away, but there was no evidence of a detrimental effect on the child from the move. Once again, the facts of *Depascale* and the deference we must accord the trial court findings do not support Appellant's argument in this appeal. We noted in *Depascale* that: "In this court's recent history, we have found that a

combination of factors must be considered to amount to a change in circumstances." *Id.* at ¶ 35.  We also held that:

> The specific and unique circumstances of the parties will always frame the issue, and the occurrence of certain events may or may not constitute a change in circumstances depending on the context in which they occurred, and depending on the surrounding totality of the circumstances.

*Id.* at ¶ 38.

{¶29}  No one particular fact must clearly demonstrate a change in circumstances, but rather "the trial court may consider the total effect of the facts alleged to have resulted in a change of circumstances."  *Hoying v. Hoying*, 2022-Ohio-2515, ¶ 67 (2d Dist.).

{¶30}  Failure to follow through with counseling, alone, is a basis for finding a change in circumstances has occurred.  *In re Wright*, 2003-Ohio-546, ¶ 30 (5th Dist.).

{¶31}  "It is beyond question that a custodial parent's interference with visitation by a noncustodial parent may be considered a change of circumstances that would allow for a modification of custody."  *In re S.M.T.*, 2012-Ohio-1745, ¶ 7 (8th Dist.).

{¶32}  Willful violation of orders regarding the facilitation of the relationship of the child with the non-custodial parent can be a basis for finding a change of circumstances. *In re R.T.*, 2025-Ohio-1829, ¶ 80 (8th Dist.).

{¶33}  Hence, the record in this case contains many instances showing that circumstances had changed since the prior decree on February 5, 2024.  The children had stopped seeing their counselor.  The court had determined that it was no longer in

L.K.'s best interest to continue to be forced into a relationship with Appellant. The court ordered Appellant to provide Appellee phone time with the children once per week, which Appellant disobeyed, initially by canceling the children's cell phones. She testified that she stopped paying for their cell phones because she was trying to save money to buy L.K. a car and some personal items. (Tr., p. 321.) When the court issued remedial orders for Appellee to deliver pre-paid cell phones to the children and for Appellant to insure that the children received the phones and used them to contact Appellee, although Appellant gave the phones to the children she later disobeyed the order by returning the phones to Appellee, unused. The court ordered Appellant to provide Appellee with all contact information within 30 days, particularly regarding counseling. She admitted she did not. (Tr., p. 327.) Appellant interfered with visitation by leaving it solely up to the children whether they would attend court-ordered meetings or have any interaction or parenting time with Appellee. Appellant also disobeyed the order for reunification counseling, again stating that she left the decision up to the children. According to Appellant, since the children did not wish to take part, she discontinued taking them.

{¶34} Any combination of these changes provided the necessary proof of change of circumstances allowing for a modification of custody. In addition, the sheer accumulation of missed visits, phone calls, and counseling sessions that had amassed since the prior custody order (even though this had also been going on earlier to some degree) provides strong evidence of a change in circumstances. Both parties agreed that it had been five-and-one-half years since Appellee was permitted to have companionship in the manner ordered by the court.

Case No. 26 MA 0009

{¶35} Appellant contends that the trial court gave only two reasons for deciding there was a change of circumstances: the passage of time, and Appellant's violation of court orders. Appellant complains these two reasons, by themselves, are not sufficient to support a change of circumstances. Appellant is mistaken in her belief the court provided only two reasons for its decision, here. Even if Appellant's characterization of the court's ruling was correct, those two reasons are enough to support a finding of a change of circumstances. The passage of time, combined with other pertinent factors, has been sufficient to support a change of circumstances. *B.C. v. S.D.*, 2021-Ohio-2963, ¶ 18 (5th Dist.). In this case, the court determined that L.K. was old enough to be able to decide that he did not want further forced contact with Appellee. C.K., on the other hand, was willing to reestablish a bond with Appellee. The maturation of the children informed the court's decision regarding a change in circumstances. Combined with all the other circumstances that changed, as mentioned above, the record in this case fully supports the court's decision, here.

{¶36} In Appellant's brief she spends a great deal of time discussing the fact that she was not represented by counsel at the hearings on November 19, 2025 and January 7, 2026. Although this is true, the record shows that Appellant had been represented by counsel for much of the litigation in this case. She was represented at various times by at least nine attorneys throughout these proceedings. On June 20, 2025, Appellant filed a request for appointed counsel. As Appellant filed a blank affidavit of income and expenses, counsel could not be, and was not, appointed. The court gave Appellant opportunities to file the necessary paperwork in order to be considered eligible for court-appointed counsel, but at the January 7, 2026 hearing she told the judge that she just

forgot to file her paperwork. (1/7/26 Tr., p. 133.) The hearing then proceeded with Appellant acting pro se. There is nothing in the record to indicate that Appellant should have had counsel appointed or that the court hindered Appellant from obtaining counsel. Appellant clearly chose to represent herself in this litigation after March of 2025, and thus does not provide a basis for error.

{¶37} Appellant's first assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT CONCLUDED THAT CHANGING C.K.'S RESIDENTIAL PLACEMENT TO FATHER SERVED C.K.'S BEST INTEREST AND THAT THE ADVANTAGES OF THE CHANGE OUTWEIGHED ITS LIKELY HARM.

{¶38} In Appellant's second assignment of error she attacks the court's conclusion that a change of custody was in the child's best interests. After the court has found a change in circumstances has occurred it must then determine whether a reallocation of parental rights and responsibilities is in the child's best interests. R.C. 3109.04(E)(1)(a). The court must retain the current residential arrangement unless a change is both in the best interests of the child, and one of the three conditions of R.C. 3109.04(E)(1)(a)(i)-(iii) is met. In this case, the court relied on condition (iii): The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶39} As mentioned earlier, a trial court's ruling on the best interest of the child is reviewed for abuse of discretion. *Miller* at 74; *Smarrella v. Smarrella*, 2015-Ohio-837,

¶ 11 (7th Dist.). "[T]he reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." *Miller* at 74.

{¶40} The factors in R.C. 3109.04(F)(1) guides the court in making a best interests ruling when a change of custody is being considered. *In re C.D.*, 2012-Ohio-4494, ¶ 66 (7th Dist.). There is a "presumption of correctness that adheres to a trial court's decision" in child custody matters. *Ketchum v. Ketchum*, 2003-Ohio-2559, ¶ 23 (7th Dist.). Nevertheless, the record must show that the court at least considered R.C. 3109.04(F)(1) in its decision. *In re Jeffreys*, 2002-Ohio-703 (7th Dist.). The court is not required to discuss irrelevant factors. *Smarrella* at ¶ 33. Additionally, the court "shall consider all relevant factors, including, but not limited to" the specifically enumerated factors. R.C. 3109.04(F)(1).

{¶41} Of particular interest in this case are R.C. 3109.04(F)(1)(f) ("The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights[.]") and (i) ("Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court[.]"). These two factors can be crucial, or even overriding, in a best interests analysis. *Ensell v. Ensell*, 2010-Ohio-5942, ¶ 34 (7th Dist.). These factors are of primary importance when the record shows, as is true in the instant case, that the residential parent violates courts orders because he or she has allowed the children to decide by themselves whether they want to take part in visitation, companionship, communication, counseling, or any other court-ordered activity. *Smarrella* at ¶ 31; *Ensell* at ¶ 34.

**{¶42}** The trial court reviewed the factors of RC 3109.04 (F)(1) to determine whether it was in the best interests of the children to designate Appellee as the residential parent:

**{¶43}** A. 3109.04(F)(1)(a) – wishes of parents. In this case, both parents wanted to be designated as the residential parent. The court found that Appellee would facilitate communication and visitation between Appellant and C.K., whereas Appellant sought to further limit Appellee's contact with the children. This factor weighs heavily in favor of changing custody.

**{¶44}** B. 3109.04(F)(1)(b) – wishes of children. The children were interviewed in-camera. L.K. did not desire to have forced contact with Appellee. C.K. was willing to have limited contact. Because Appellant is unwilling for Appellee to have any contact with C.K., this factor weighs in favor of a change of custody.

**{¶45}** C. 3109.04(F)(1)(c) – children's interaction with parents, siblings and others. The children are attached to Appellant, and have almost no interaction with Appellee, mainly due to Appellant's actions. Appellant is overprotective, and struggles to maintain control over the lives of the children. There was no evidence of interaction with other family members on Appellant's side of the family. The children have had no opportunity for contact with Appellee's family. Although it is not guaranteed that a change of custody would overcome all the detrimental aspects of the current situation, it would at least give C.K. a chance to develop a more normal relationship with both parents, and weighs in favor of a change in custody.

**{¶46}** D. 3109.04(F)(1)(d) – children's adjustment to home, school, and community. The children struggle in school, particularly L.K. Appellee testified that he would likely send the boys to a different school. This factor appears to favor neither party.

**{¶47}** E. 3109.04(F)(1)(e) – mental and physical health of all parties. Appellee has no mental or physical health issues and is in good health. Appellant has high blood pressure, but no other issues that would impact her ability to care for the children. Although not mentioned by the court, it is clear that the parents and the children required counseling. Appellant was not willing to participate in, or facilitate, any such counseling. Appellee, on the other hand, understood that counseling would be good for the boys and was willing to facilitate it. This factor weighs in favor of change in custody.

**{¶48}** F. 3109.04(F)(1)(f) – facilitation of parenting time and visitation. Appellee assured the court that he would honor parenting time with Appellant. Appellant did not make a similar assurance and repeatedly stated that she would not cooperate with visitation and the children's contact with Appellee if the children did not want it. Appellant failed to cooperate with telephone time, scheduled visits with Appellee, counseling visits, and any interaction that Appellee was permitted to have with the children regardless of whether that interaction was ordered by the court. This factor weighs very heavily in favor of a change in custody.

**{¶49}** G. 3109.04(F)(1)(g) – child support. Child support is current.

**{¶50}** H. 3109.04(F)(1)(h) – convictions for child abuse or domestic violence. The court determined this factor was not applicable.

**{¶51}** I. 3109.04(F)(1)(i) – denial of parenting time. Appellant has willfully denied Appellee parenting time related to visitation, FaceTime chats, visits for dinner, and

counseling. Most of the testimony Appellant gave at the change of custody hearing involved the many ways in which she denied Appellee parenting time. This factor also weighs very heavily in favor of the change of custody.

{¶52} J. 3109.04(F)(1)(j) – relocation. Neither parent has immediate relocation plans.

{¶53} Clearly, the majority of the factors cited above weigh either partially or heavily in favor of the change of custody. The court may consider factors in addition to those specifically listed in R.C. 3109.04(F)(1)(a)-(j). *Bonar v. Boggs*, 2002-Ohio-7173, ¶ 30 (7th Dist.). "R.C. 3109.04(F)(1) sets forth a nonexclusive list of factors that the trial court must consider in evaluating the best interests of the children[.]" *Myers v. Myers*, 2003-Ohio-3552, ¶ 44 (7th Dist.). The court determined that the hostility between the parents had increased in amount and intensity since the prior order, and has become more disruptive, largely due to Appellant's behavior. This behavior completely interfered with Appellee's ability to have any type of parenting time. It has impacted the emotional well-being of the children in a negative manner. The court determined that it was necessary for the well-being of the children that they have some contact with Appellee. "The Court feels very strongly that Plaintiff needs to be involved" in the children's lives, and "the only way this is going to happen is to grant a modification in parental rights." (1/28/26 J.E., p. 16.) Given that the current custody situation was detrimental to the children, the best interests of the children required a change of custody. The court specifically found that the change of custody was in the best interests of the children and that harm from the change in custody did not outweigh the benefits of retaining Appellant as residential parent.

Case No. 26 MA 0009

**{¶54}** It is apparent from the record that the change of custody was the trial court's attempt to break the cycle of discord and disruptive behavior, predominantly caused by Appellant, that has existed in this case since the divorce. The primary concern regarding this issue is that it was in the children's best interest to have consistent, meaningful, positive interaction with both parents, which was not occurring and would not occur if Appellant remained as the sole custodial parent.

**{¶55}** Appellant contends there was no evidence that lesser remedies, other than a change of custody, would fail, but she has not cited to any rule or court case in which lesser remedies are required before the court reallocates parental rights. Appellant cites *Depascale*, *supra*, because in that case, while the trial court did not order a change in custody the court found it was reasonable to apply less disruptive changes. *Id.* at ¶ 65. In *Depascale*, though, the court held there was no change of circumstances, so the court did not reach the best interests of the children test. Additionally, *Depascale* is silent as to whether lesser remedies must be considered by the trial court before reallocating the custodial parent. It is clear in the instant appeal that the trial court attempted several lesser remedies, but Appellant refused to facilitate Appellee's companionship under any of the court's many orders.

**{¶56}** Appellant also argues that the record repeatedly shows how little contact Appellee has with the children, making it unreasonable that he should become the residential parent. The record and the analysis of the trial court show Appellant is at fault in Appellee's lack of contact with the children. Thus, this fact cannot be used as a reason to avoid a change of custody. This is obviously a difficult case, particularly when it will result in one child residing with mother and one with father. Simply because a case is

difficult, though, does not reflect that the court abused its discretion in arriving at the outcome.

**{¶57}** Appellant's second assignment of error is without merit and is overruled.

Conclusion

**{¶58}** Appellant appeals the trial court's decision to grant Appellee's motion for custody of his younger child C.K. Appellant argues that there was no change in circumstances to allow the court to reallocate parental rights, and that granting Appellee custody of C.K. was not in the child's best interest. The record fully supports the trial court's judgment, here. There was a change in circumstances, in that Appellant completely denied any type of companionship or contact between Appellee and the children, and she repeatedly refused to obey numerous court orders involving Appellee's contact with the children, among other facts. The court thoroughly reviewed the best interest factors of R.C. 3109.04(F)(1) and determined that Appellee must have companionship with his children and the only way to facilitate this is through naming Appellee as the residential parent of C.K. Appellant's assignments of error have no merit and the judgment of the trial court is affirmed.

Robb, J. concurs.

Dickey, J. concurs.

Case No. 26 MA 0009

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Domestic Relations Division, of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**